MURDOCK MATHESON *vs.* EQUITABLE MARINE INSURANCE COMPANY OF PROVINCETOWN.

Suffolk.   Nov. 16, 1874. — Sept. 2, 1875.   WELLS & DEVENS, JJ., absent.

By the general law of marine insurance, independently of any particular clause in the policy or local usage, if a partial loss of a vessel insured is repaired and a total loss afterwards happens during the term of the policy, the insurer is liable for the amount of both losses, although it exceeds the amount named in the policy.

CONTRACT upon a policy of marine insurance issued by the defendant to Robert Soper & Son, for whom it concerns, loss, if any, payable to the plaintiff, " for $300 on one sixteenth of the schooner Thriver, and $300 on one sixteenth of outfits on board said schooner for a whaling voyage at and from Boston, commencing the risk on November 21, 1870, at noon, and terminating when she arrives at her port of discharge in the United States and is discharged; " " Schooner valued at $5000; outfits, $5000 ; " and containing the following clauses :

" Touching the adventures and perils which the said insurance company are contented to bear, and take upon them in this voyage, they are, of the seas, fire, enemies, pirates, assailing thieves, restraints and detainments of all kings, princes or people, of what nation or quality soever, barratry of the master (unless the insured be owner of the vessel) and of the mariners, and all other losses and misfortunes which have or shall come to the damage of the said schooner and outfit or any part thereof, to which insurers are liable by the rules and customs of insurance in Boston." " And in case of any loss or misfortune, it shall be lawful for the insured, his factors, servants and assigns, to sue, labor and travel for, in and about the defence, safeguard and recovery of the said

schooner and outfits or any part thereof, without prejudice to this insurance; to the charges whereof, the said insurance company will contribute, in proportion as the sum insured is to the whole sum at risk. And so the president and directors aforesaid are contented, and do hereby bind the capital stock and other common property of the said insurance company to the insured, his executors, administrators and assigns, for the true performance of the premises, confessing themselves paid the consideration due unto them, for this insurance, by the insured, at and after the rate of ½ per cent. per month guarantee 3 per cent. To add 1 per cent. if to or from ports in Texas or Mexico, in the time; and 1 per cent. if to or from ports in the West Indies, between July 15th and October 15th; and ½ per cent. if in Bay St. Lawrence in September, and ¾ per cent. if there in October." " And that the acts of the insured or insurers, in recovering, saving and preserving the property insured, in case of disaster, shall not be considered a waiver or acceptance of an abandonment."

The parties submitted the case to the judgment of the Superior Court upon the following facts : " The vessel sailed from Boston, on the voyage described in the policy, on or about November 21, 1870, and while in the course of said voyage sustained two partial losses by the perils of the sea insured against, one in October, 1871, the other in September, 1872 ; and in consequence of those losses was each time compelled to put into Bermuda, where she was repaired at a cost in each case exceeding seven per cent. of the amount insured, exclusive of all charges and expenses incurred for the purpose of ascertaining and proving the loss. Afterwards, on February 2, 1873, the vessel, being still in the prosecution of said voyage, was totally lost, with all her outfits, by a peril of the sea. The defendant had due notice of said losses and the adjustment of the same more than sixty days prior to the date of the plaintiff's writ.

" The amount of the two partial losses was $174.73. There is due to the defendant, on account of the policy for premiums, savings, &c., the sum of $97.20. It is agreed that the plaintiff is entitled to recover the sum of $600 as for a total loss, less said sum of $97.20, with interest thereon from the date of the writ. It is further agreed, if evidence of the same would be competent, that a practice exists among the underwriters of Boston,

in cases like the present, to pay for partial losses in addition to the total loss, even though the amount so paid exceeds the amount of the policy.

The Superior Court gave judgment for the plaintiff for the sum of $502.80, being the amount of the total loss, and also for the sum of $174.73, being the amount of the two partial losses, with interest on both sums from the date of the writ. The defendant appealed to this court.

*C. G. Thomas*, for the plaintiff.

*H. C. Hutchins & H. H. Currier*, for the defendant.

GRAY, C. J. A policy of marine insurance is a contract by which, for a consideration stipulated to be paid by one interested in a ship, freight or cargo, subject to marine risks, another undertakes to indemnify him against some or all of those risks during a certain period or voyage ; in other words, that, so far as the perils insured against are concerned, the subject insured shall remain, throughout the term of the policy, of the value which it had at the beginning of the adventure. If that value is fixed by the policy, it is conclusive upon the parties ; and the liability of the underwriter for each loss during the adventure is limited to such proportion of the actual loss as the amount insured bears to the value of the property at risk.

If the subject is once totally lost, either actually or constructively, it ceases to exist for the purposes of the policy, and, even if it is not entirely destroyed, the underwriter, by paying that loss, fulfils his contract, and is exempt from liability for any subsequent injury to it. If a partial loss occurs, and before it is repaired a total loss ensues during the term of the policy, the underwriter is liable for the amount of the total loss only, because that is equivalent to the whole damage which the assured has sustained, and affords him a full indemnity.

But if the partial loss is repaired by the assured, the undertaking of the underwriter to indemnify him to the amount specified continues throughout the term of the insurance ; and he may therefore be charged for the amount of a partial as well as of a subsequent total loss, although the amount of the two sums, which he is thereby obliged to pay exceeds the amount named in the policy. This was judicially stated to be the law, as long ago as 1810, in this Commonwealth and in England.

In *Wood* v. *Lincoln & Kennebeck Ins. Co.* 6 Mass. 479, 486, in which a vessel, insured by a time policy, was held to be partially lost by stranding, Chief Justice Parsons said : "If the plaintiff had afterwards employed her within the policy, and she had incurred a subsequent loss, total or partial, the defendants would have been holden to pay it, in addition to the partial loss with which they are chargeable by the stranding in question."

In *Livie* v. *Janson*, 12 East, 648, 655, decided in the same year, Lord Ellenborough said : " There may be cases in which, though a prior damage be followed by a total loss, the assured may nevertheless have rights or claims in respect of that prior loss, which may not be extinguished by the subsequent total loss. Actual disbursements for repairs in fact made, in consequence of injuries by perils of the seas prior to the happening of the total loss, are of this description ; unless indeed they are more properly to be considered as covered by that authority, with which the assured is generally invested by the policy, of ' suing, laboring and travailing, &c., for, in and about the defence, safeguard and recovery of the property insured ' " — thus distinctly asserting that, even if the partial loss did not fall within the suing and laboring clause, the underwriters were liable for it.

In *Le Cheminant* v. *Pearson*, 4 Taunt. 367, 380, it was held, after advisement, that the underwriters were liable for the amount of a partial loss which had been repaired by the assured, as well as for a subsequent total loss within the policy ; and Sir James Mansfield, C. J., said : " In practice I know of cases in the Court of King's Bench, where such expenses have been recovered as an average loss, without making any distinction whether it was recoverable as an average loss from damage repaired, or within the words of the permission to ' sue, labor and travail,' &c. ; and as no such distinction has been made, we find it safer to adhere to the practice which has obtained, and to call it all average damage."

It is implied by Chief Justice Parker in *Rice* v. *Homer*, 12 Mass. 230, 235, and distinctly affirmed by Mr. Justice Story in *Potter* v. *Providence Washington Ins. Co.* 4 Mason, 298, 300, that if a partial loss or damage to the ship occurs in the course of a voyage, and afterwards in the same voyage a total loss of the ship, and expenses have in the mean time been incurred to repair

it, those expenses are payable by the underwriters, in addition to the total loss.

In *Brooks* v. *MacDonnell*, 1 Yo. & Col. Exch. 500, 515, Lord Abinger, after observing that a policy of marine insurance was an instrument of indemnity, and that in all cases of total loss salvage belongs to the underwriter and he pays all the expenses, added : " It is also clear, that whenever the underwriter adjusts a partial loss, he still remains liable on the policy, and may go on paying partial losses exceeding, in the whole, cent. per cent., and may ultimately have to pay a total loss of cent. per cent."

In *Stewart* v. *Steele*, 5 Scott N. R. 927, it was implied throughout the case, and distinctly asserted by Mr. Justice Maule, on pp. 941, 949, that if the partial loss had been repaired before the subsequent total loss, the underwriter was liable for the amount of both.

In that case, Mr. Justice Maule stated that in *Blackett* v. *Royal Exchange Assurance Co.* 2 Cr. & Jerv. 244 ; *S. C.* 2 Tyrwh. 266, in which he was of counsel for the plaintiff, " the assured, having incurred expense to a considerable amount during the voyage and there being afterwards a total loss, recovered £120 against an underwriter, who had subscribed £100 — for a partial, and a subsequent total loss — the £100 not being, like the penalty in a bond, the limit of the underwriter's liability, but the proportion of the loss he was liable for." 5 Scott N. R. 949.

The fact, appearing by the report of the case thus referred to, that Denman, Campbell and Follett, who were of counsel for the defendant, rested an unsuccessful defence to the claim of a par tial loss upon other grounds, shows that the law upon this point was then generally understood to be well settled. And it is so treated in the principal English treatises on marine insurance. Park on Ins. (8th ed.) 221, 843, 844. Marshall on Ins. (5th ed.) 435. 2 Arnould on Ins. (2d ed.) 848, 986, 1193. Tudor's Lead. Merc. Cases (2d ed.) 216. See also 2 Parsons Marit. Law, 272.

A rule recognized so long and so often, by such a weight of authority, and not contradicted or doubted by any judge in England or America for sixty years, is too firmly established to be shaken by the *obiter dicta* in the very recent case of *Lidgett* v. *Secretan*, L. R. 6 C P. 616 ; the still later decision of the Com

mission of Appeals in *Alexandre* v. *Sun Ins. Co.* 51 N. Y. 253 , or the doubts expressed in 2 Phil. Ins. (4th ed.) § 1743. See also § 1267.

The early case of *Schmidt* v. *United Ins. Co.* 1 Johns. 249, in which it was held that under a policy of insurance upon goods there could be no recovery, in addition to a total loss by blockade, for the amount of a previous general average loss by perils of the sea — unless it is to be supported on the ground suggested by Mr. Justice Livingston, on p. 264,. that the general average loss must already have been paid by the consignee out of the proceeds of the goods, that is, out of a fund belonging to the defendants — is overruled by the later decision of the same court in *Barker* v. *Phœnix Ins. Co.* 8 Johns. 307, 318.

We place no reliance upon the well known usage of the underwriters of Boston, admitted in the case stated ; because it does not appear to extend to Provincetown, where this policy was made ; *Parkhurst* v. *Gloucester Ins. Co.* 100 Mass. 301 ; and because the reference in the policy to the rules and customs of insurance in Boston appears to have been inserted by way of designating the perils insured against, and not by way of regulating adjustments of losses. *Eager* v. *Atlas Ins. Co.* 14 Pick. 141, 144.

Nor do we give any weight to the fact that the policy, so far at least as concerns the mode of computing the premium, resembles a time policy rather than a voyage policy ; *Lovering* v. *Mercantile Ins. Co.* 12 Pick. 348 ; because we do not find that any distinction as to the amount for which the underwriter may be liable in the two kinds of policies has been made in any of the authorities.

The ground of our decision is that by the general law of marine insurance, independently of any particular clause or local usage, the partial losses having been repaired before the total loss happened, and the latter as well as the former having occurred within the term of the policy, the underwriters were liable for both. *Judgment affirmed.*